## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Samuel I. Cox, | Case No. 21-cv-1776 (SRN/TNL) |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANT HARPSTEAD'S MOTION TO DISMISS** |
| Commissioner of the Minnesota Department of Human Services, John and Jane Doe, | |
| Defendants. | |

Samuel I. Cox, 1111 Hwy. 73, Moose Lake, MN 55767, Pro Se Plaintiff

Sparrowleaf Dilts McGregor, Office of the Minnesota Attorney General, 445 Minnesota St., Ste. 1100, St. Paul, MN 55105, for Defendants

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss filed by the Commissioner of the Minnesota Department of Human Services [Doc. No. 20].  Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants the Motion to Dismiss.

## I.    BACKGROUND

Plaintiff Samuel I. Cox is civilly committed to the Minnesota Sex Offender Program ("MSOP"), which the Minnesota Department of Human Services ("DHS") operates.

1

(Compl. [Doc. No. 1] at 1–2.[1])  MSOP provides treatment to persons committed as sexual psychopathic personalities and sexually dangerous persons in facilities located in Moose Lake and St. Peter, Minnesota.  Minn. Stat. § 253D.02, subds. 4, 13, 15, 16.

In August 2021, Cox filed this civil rights lawsuit against the Commissioner of DHS (identified as a John or Jane Doe Defendant) and mailroom employees (also identified as John or Jane Doe Defendants) pursuant to 42 U.S.C. § 1983.  (Compl. at 1–2.)  The current Commissioner of DHS is Jodi Harpstead.  *See* DHS, Media, Executive Staff Bios, https://mn.gov/dhs/media/executive-staff-bios/media-bio-harpstead.jsp (last visited Aug. 8, 2022).

Cox alleges in the Complaint that on an unknown date, Allison Immel, an MSOP clinician, questioned him about money orders that he had received in the mail.  (Compl. at 2.)  When Cox asked why she needed the information, he alleges that Immel said the staff wanted to know how the money was being used.  (*Id.*)  Cox objected, finding the monitoring of his personal financial affairs to constitute harassment and a violation of his rights.  (*Id.* at 2–3.)  Seeking greater insight into Immel's request, Cox attempted to obtain copies of any incident reports involving his money orders, but was unsuccessful in obtaining the information.  (*Id.* at 3.)  Cox suggests that such an incident report may have existed, but was subsequently "taken off" the client network that contains such reports. (*Id.*)

---

[1] For the sake of clarity, the Court's citations to the Complaint are to page numbers, as the enumerated paragraphs in the Complaint are not consecutive.  (*See* Compl at 3.)

Cox alleges that subsequently, Phil Olson, an MSOP Unit Director, inquired about the money orders. (*Id.*) When Cox questioned why "that [would] be a concern of theirs," he alleges that Olson offered no explanation other than "[he] was told to ask." (*Id.*)

Cox contends that "mailroom policy clearly states that if any mail monitoring is to occur of any kind for any reason I the patient [am] to be notified in advance via mail that way I can assure that mail right[s] are being respected within the scope of my constitutional rights." (*Id.*) Further, Cox asserts in the Complaint that "[t]he matters of my financial affairs are for the purpose of numerous financial court matters, and I have the right to privacy especially in these matters." (*Id.*)

MSOP is required by law to develop and follow policies and procedures to maintain "a secure and orderly environment that is safe for persons in treatment and staff and supportive of the treatment program." Minn. R. 9515.3080, subp. 1. The policy at issue here is MSOP's Client[2] Mail Policy. (Miller Decl. [Doc. No. 23], Ex. 1 (MSOP Client Mail Policy) at 1.) MSOP maintains the Client Mail Policy "[t]o provide procedures for managing incoming and outgoing client mail to prevent the possible introduction of contraband and maintain the safety and security of the facility, staff and public." (*Id.*)

Pursuant to the Client Mail Policy, MSOP staff visually scan incoming mail for contraband, with the exception of privileged and legal mail. (*Id.*) MSOP staff may open and inspect regular, non-privileged mail prior to delivery and outside the presence of the client. (*Id.*) In the course of scanning mail, staff may read the incoming mail based on

---

[2] DHS refers to the persons civilly committed to MSOP as clients.

reasonable suspicion.  (*Id*.)  With respect to outgoing mail, excluding privileged mail or legal mail, clients place unsealed mail in the general outgoing mailboxes on residential units or in a centralized distribution area.  (*Id*. at 6.)  MSOP staff visually check and scan all outgoing mail, after which they stamp the mail to indicate that it has been sent from a secure treatment facility.  (*Id*.)

Privileged mail must have a destination or return address clearly indicating that it is from one of 27 identified sources, such as the American Civil Liberties Union, the Bureau of Indian Affairs, or DHS.  (*Id*. at 2.)  Legal mail must have a destination or return address that clearly indicates it is to or from "court, court staff, verified attorneys and established groups of attorneys involved in representing clients in judicial proceedings."  (*Id*. at 1.) MSOP staff may only open privileged mail and legal mail "in the client's presence, removing and scanning the contents and envelope to ensure it contains no contraband or additional enclosed letters or envelopes."  (*Id*. at 8.)  If the privileged or legal mail contains contraband, staff informs the client and withholds the mail.  (*Id*. at 9.)

Pursuant to the Client Mail Policy, staff may monitor incoming and outgoing mail only when based on "articulated objective information."  (*Id*. at 8.)  If a client or sender of mail is subject to mail monitoring, all mail to and from that person, other than privileged mail, is reviewed before coming into or going out of the facility.  (*Id*.)  A request to monitor mail must be supported by either (1) a reasonable suspicion that mail to or from the monitored individual constitutes a safety or security risk to the facility, specific individuals, or the general public; or (2) a reasonable basis to suspect the client or sender is involved in criminal activity.  (*Id*.)  In addition, a request to monitor inmate mail must be made in

4

writing and be approved or denied by MSOP's Executive Director and its Legal and Records Director.  (*Id*.)  Approved mail monitoring requests expire after 30 days and require authorization for an extension.  (*Id*.) The Client Mail Policy contains no requirement that clients be informed that their mail is monitored.  (*See id*.)

In this § 1983 lawsuit, Cox alleges violations of the following:  (1) the Fourth Amendment's prohibition against unreasonable searches and seizures; (2) the Fourth Amendment's right to privacy; and (3) Minn. Stat. § 144.651.  (Compl. at 4.)

Under Federal Rule of Civil Procedure 12(b)(6), Commissioner Harpstead moves to dismiss with prejudice all of Plaintiff's claims on the following grounds:  (1) collateral estoppel bars the claims regarding MSOP's Client Mail Policy; (2) Cox fails to allege a violation of his constitutional rights; (3) the claims against Commissioner Harpstead in her individual capacity are barred or otherwise fail; and (4) Cox fails to state a claim under Minn. Stat. § 144.651 because the statute does not confer a private right of action, and even if it did, Eleventh Amendment immunity would apply.  (Def.'s Mem. [Doc. No. 21]. at 6–19.)

In opposition, Cox maintains that the Commissioner's arguments do not accurately characterize his claims, clarifying that he alleges MSOP staff "deviate from their own policies just in an attempt to harass" him.  (Pl.'s Opp'n [Doc. No. 42] at 2.)  He further asserts that MSOP's conduct is at odds with Minn. Stat. § 144.651.  (*Id*. at 2–3.)  In addition, Cox contends that collateral estoppel is inapplicable because his claims involve the "[MSOP] facility attempting to intimidate [the] client with other departments within the facility to provide information about plaintiff['s] personal financial affairs of himself

and his family where there has been no legal crime committed nor safety factor." (*Id.*) Finally, because the Commissioner's memorandum contains an erroneous reference to "Plaintiff *Jonathan* Samuel Cox," Cox argues it is unclear whether the motion relates to "a different party that is not the plaintiff." (*Id.* at 1–2) (emphasis added). Likewise, Cox points out a typo in the Commissioner's memorandum that refers to "email" instead of "mail." (*Id.* at 2.)

In her Reply, Commissioner Harpstead asserts that Cox fails to present a substantive response to her arguments for dismissal, effectively conceding their validity. (Reply [Doc. No. 43] at 1–2.) In addition, she argues that because of the nature of the MSOP class action, *Karsjens v. Piper*, 11-cv-3659 (DWF/TNL) (D. Minn.), certified under Federal Rule of Civil Procedure 23(b)(2), Cox could not opt out of the class and therefore it is appropriate to apply collateral estoppel to Cox's challenges to the Client Mail Policy. (Reply at 4–5.) She further notes that the two typographical errors in her initial memorandum have no bearing on the substance of her motion.[3] (*Id.* at 2 n.1.)

Cox submits a "response" [Doc. No. 46] to the Commissioner's Reply, quoting a policy requiring "staff" to be familiar with "all DCT-wide and applicable divisional policies," and he again addresses whether class members may opt out of a Rule 23(b)(2) class action. Because the Local Rules do not permit the filing of a response to a reply, the Court declines to consider the arguments that Cox presents in his "response" to the

---

[3] The Court agrees. It is perfectly clear that the instant motion concerns Plaintiff Samuel I. Cox, and any reference to "email" was a typographical error. Neither of these inadvertent errors affects the substance of the Commissioner's motion.

Commissioner's Reply.   D. Minn. L.R. 7.1 (c) (permitting the filing of a motion and supporting documents by party moving for dispositive relief, a response in opposition by responding party, and a reply for the moving party).

## II.   DISCUSSION

### A.   Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true and views those allegations in the light most favorable to the plaintiff.  *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations.  *Id*.  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings.  *Hamm v. Rhone-Poulenc Rorer Pharm., Inc*., 187 F.3d 941, 948 (8th Cir. 1999).  The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Illig v. Union Elec. Co*., 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).  Here, the Court considers the MSOP Client Mail Policy to be necessarily embraced by the pleadings, as it is referenced in the Complaint and Cox relies on it in support of his allegations.  (*See* Compl. at 3.)

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### B.    Constitutional Claims

Although Cox is not a prisoner, as a civilly committed person, "his confinement is subject to the same safety and security concerns as that of a prisoner." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012). The Eighth Circuit has analyzed constitutional claims of a person civilly committed to MSOP "in the context of that commitment and its accompanying restrictions." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (analyzing MSOP participant's due process claims). For example, it has found that the liberty interests of a person civilly committed to MSOP are "considerably less than those held by members of free society," but greater than those of a prison inmate. *Id.*

Cox's primary allegation is that Defendants' conduct has violated his Fourth Amendment right to privacy and the protections against unreasonable search and seizure. (*See* Compl. at 2–4.) Although Cox does not assert a First Amendment violation, the Court notes that MSOP's Client Mail Policy has been found constitutional under the First Amendment. In *Karsjens v. Piper*, the court found on summary judgment that MSOP's

8

Client Mail Policy, which included the inspection of incoming and outgoing non-legal mail, did not violate First Amendment, and the plaintiff class did not appeal that portion of the court's order.[4] 336 F. Supp. 3d 974, 994 (D. Minn. 2018), *aff'd in part, vacated in part, remanded sub nom.*, *Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021).

Similarly, in *Semler v. Ludeman*, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *11 (D. Minn. Jan. 8, 2010), the court found that MSOP's Client Mail Policy was reasonably related to MSOP's interest in ensuring and maintaining the safety of its staff and patients by prohibiting contraband. *See also Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004) (rejecting First Amendment challenge to prison mail policy, stating that "[w]hile prisoners have a right to send and receive mail, prison officials have a legitimate interest in monitoring that mail for security reasons."); *Thongvanh v. Thalacker*, 17 F.3d 256, 258–59 (8th Cir. 1994) (finding no First Amendment violation based on prison's policy of reading non-legal incoming and outgoing prisoner mail).

---

[4] Commissioner Harpstead relies on *Karsjens* for the proposition that Cox is collaterally estopped from challenging the constitutionality of MSOP's Client Mail Policy. (Def.'s Mem. at 6–8.) Because *Karsjens* involved a First Amendment challenge and Cox does not raise such a claim, the Court declines to apply collateral estoppel, and proceeds to address Cox's claims as pleaded in the Complaint. *See Wong v. Minnesota Dep't of Hum. Servs.*, 820 F.3d 922, 933 (8th Cir. 2016) (noting that collateral estoppel applies to bar relitigation of claims where, among other things, the issues in the prior lawsuit are identical to those in the current lawsuit). Accordingly, the Court does not address the parties' arguments concerning whether Cox was a member of the *Karsjens* Rule 23(b)(2) class action.

### 1.      Right to Privacy

The Supreme Court has stated, "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984); *see also Lyons v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984) (holding that while prisoners retain some Fourth Amendment rights, they are limited by institutional security needs and prisoners' reduced expectation of privacy).   In particular, the Eighth Circuit has long held that prison officials do not violate an inmate's Fourth Amendment privacy rights by inspecting non-legal inmate mail.  *See United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986) (finding no Fourth Amendment violation where prison official inspected and copied prisoner's outgoing mail because conduct was justified in light of legitimate objectives of the prison system).

In light of this authority, the Court therefore finds that Cox fails to state a plausible legal claim that his constitutional right to privacy was violated by the review of his non-legal mail, in light of MSOP's valid objective to prevent the possible introduction of contraband into MSOP facilities and to maintain the safety and security of the facilities. (*See* Client Mail Policy at 1.)  Commissioner Harpstead's Motion to Dismiss is granted in this regard, and Cox's Fourth Amendment privacy claim based on the review of his non-legal mail is dismissed with prejudice.

### 2.      Search and Seizure

In *Bell v. Wolfish*, the Supreme Court observed that while convicted prisoners and pretrial detainees retain some Fourth Amendment rights upon commitment to a corrections

facility, "[t]he Fourth Amendment prohibits only unreasonable searches."  441 U.S. 520, 548 (1979).  To assess reasonableness under the Fourth Amendment, courts "must consider the scope of the particular intrusion, the manner in which [the search] is conducted, the justification for initiating it, and the place in which it is conducted," and should also "accord[] wide-ranging-deference" to "the expert judgment" of officials adopting and implementing the policies in question.  *Id.*  at 548, 559 (applying this analysis and finding that visual body-cavity inspections following contact visits did not violate the Fourth Amendment).

Although not in the context of a § 1983 claim, in *United States v. Baumgarten*, 517 F.2d 1020, 1028 (8th Cir. 1975), the Eighth Circuit rejected a Fourth Amendment search and seizure claim involving the inspection of a pretrial detainee's mail.  The court held that the defendant's letter, which a jailor reviewed while the defendant was in pretrial custody, was not unlawfully seized.  *Id.*  In particular, the court noted that the jail's screening procedure served the purpose of security, it did not impede the flow of mail, and placed no greater limitations on the detainee's rights of expression than necessary.  *Id.*

Specifically regarding MSOP, in *Semler v. McGowan*, No. A19-0710, 2020 WL 54558, at *4 (Minn. Ct. App. Jan. 6, 2020), the Minnesota Court of Appeals addressed a Fourth Amendment challenge to MSOP's Client Mail Policy based on a claim of unreasonable search and seizure.  Applying the *Bell* test for reasonableness, noted above, and relying on a similar Fourth Amendment challenge to MSOP's body and room searches in a 2010 federal case brought by Semler, the court found that MSOP searches of client mail are reasonable because the scope of intrusion is limited, the searches are conducted

11

pursuant to MSOP's Client Mail Policy, and the searches are justified by MSOP's need for security. *Id.* (citing *Semler*, 2010 WL 145275, at *17–22).

Even viewing the facts in the light most favorable to Plaintiff, Cox's Fourth Amendment search and seizure claim related to his non-legal mail fails as a matter of law. Under *Bell*, MSOP's inspection of Cox's non-legal mail is not an unreasonable search and seizure because of the limited scope of intrusion, the inspections are conducted pursuant to MSOP policy, and the inspections are justified for purposes of institutional security. Accordingly, the Commissioner's Motion to Dismiss is granted in this regard and Cox's Fourth Amendment search and seizure claim related to non-legal mail is dismissed with prejudice.

### 3.     Legal Mail

In the Complaint, Cox alleges that his money orders relate to the "management of [his] personal finances." (Compl. at 2.)   Granting a liberal construction to his pro se pleadings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), he appears to suggest that the money orders may relate to legal proceedings. (Compl. at 3) ("The matters of my financial affairs are for the purpose of numerous financial court matters, and I have the right to privacy especially in these matters.").

Mail to or from an inmate's attorney and identified as such may not be opened for inspection for contraband except in the presence of the prisoner. *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981). Although the inmate in *Wolff* challenged a prison mail policy under the First, Sixth, and Fourteenth Amendments, the Supreme Court's analysis did not turn on a particular

amendment: "We need not decide, however, which, if any, of the asserted rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found acceptable by the State." 418 U.S. at 576; *see also Jensen*, 648 F.2d at 1181, 1182 (referring only to inmates' "civil rights" with respect to the inspection of mail). The Supreme Court found that opening legal mail in an inmate's presence did not violate an inmate's constitutional rights, particularly because "[t]he possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letter." *Wolff*, 418 U.S. at 576–77.

To the extent Cox contends that MSOP staff reviewed his legal mail outside his presence, he fails to state a constitutional violation. Most notably, he does not allege that his money orders were marked as legal or privileged mail. *Jensen*, 648 F.2d at 1182–83 (stating that legal mail must "be specially marked as originating from an attorney, with that attorney's name and address."). It is appropriate to require the express labeling of incoming and outgoing legal communications because requiring prison officials to check whether each piece of mail is from an attorney would be "a near impossible task of administration." *Wolff*, 418 U.S. at 576.

Even though an inmate's legal mail must be opened in his or her presence, isolated or inadvertent instances of opening confidential legal mail will not give rise to a constitutional violation, absent evidence of improper motive or interference with an inmate's right to counsel or access to the courts. *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Here, even if Cox had alleged that the money orders were properly labeled

13

as legal or privileged mail, the two verbal inquiries from staff would suggest that MSOP reviewed them on just two isolated occasions.

Nor does Cox allege non-speculative facts regarding an improper motive. His allegations that MSOP staff "harassed" him on two occasions by inquiring about his money orders and/or inspecting his mail are simply not plausible allegations of improper motive. (Compl. at 2–5.) In Cox's prayer for relief, he refers to the MSOP defendants "[h]arassing me and causing Intentional Emotional Infliction of distress."[5] (*Id.* at 5.) As the Court has discussed, MSOP staff are constitutionally permitted to inspect regular mail outside the presence of the client, and there is no allegation here that Cox's money orders were marked as legal or privileged mail.

Nor does Cox allege any facts that the Commissioner or MSOP staff interfered with his right to counsel or that such interference resulted in the denial of his access to the courts. *Beaulieu*, 690 F.3d at 1037 ("Absent an articulation of how the alleged wrongful conduct actually blocked the Patients' access to filing a complaint, or caused a filed complaint to be deficient, the Patients' alleged injuries are merely speculative.") (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008)).

---

[5] It does not appear that Cox intended to assert a state law claim for intentional infliction of emotional distress, but if he did, the allegations here fail to state a claim, as he merely alleges that he was questioned by MSOP staff. Under Minnesota law, a person asserting a claim for intentional infliction of emotional distress must allege four elements, including that the conduct in question must be extreme and outrageous. *Langeslag v. KYMN Inc*., 664 N.W.2d 860, 864 (Minn. 2003) (citing *Hubbard v. United Press Intern., In*c., 330 N.W.2d 428, 438–39 (Minn. 1983)). The conduct here fails to meet that standard.

Accordingly, Commissioner Harpstead's Motion to Dismiss is granted with regard to any claim that Cox's constitutional rights were violated by reviewing his legal mail. Any such claims concerning the review of his legal mail are dismissed without prejudice for failure to adequately plead facts supporting such a claim.

### 4.    MSOP's Alleged Failure to Follow Its Own Policy

Cox also contends that his rights were violated because MSOP failed to follow its own Client Mail Policy.  (See Compl. at 3.)  It is unclear whether this allegation pertains to his right to privacy claim or search and seizure claim.  He asserts the Client Mail Policy requires advance client notification "if any mail monitoring is to occur of any kind for any reason." (*Id*.)  His allegation finds no support in the Client Mail Policy, however, which permits staff to open and scan all mail, except legal mail and privileged mail, without cause or prior notification, (Client Mail Policy at 3), and also permits mail monitoring under certain conditions and subject to executive approval, without client notification.  (*Id*. at 8.) The Client Mail Policy is consistent with the constitutional standards discussed above and the Constitution does not require advance client notification of mail monitoring "of any kind for any reason."

Accordingly, Cox fails to state a claim of a constitutional violation based on MSOP's failure to follow its own policy and this claim is dismissed with prejudice to the extent his claim is based on non-legal mail.[6]  To the extent his claim regarding MSOP's failure to follow its own policy is based on legal mail, it is dismissed without prejudice.

---

[6] Moreover, even if staff violated the Client Mail Policy, absent a constitutional violation, "there is no § 1983 liability for violating prison policy."  *Gardner*, 109 F.3d at

### C.      Claims Against Commissioner in Her Individual Capacity

Cox brings his claims against the Commissioner in her individual and official capacities, seeking declaratory and injunctive relief.[7]  (Compl. at 1–2, 5) (requesting "[a] preliminary and permanent injunction ordering defendants MSOP employees to cease their actions," including investigations into Cox's financial affairs, and to reevaluate the Client Mail Policy).  In addition to the Commissioner's general arguments in support of dismissal, addressed above, she also moves to dismiss the individual-capacity claims and moves to dismiss based on qualified immunity.[8]  (Def.'s Mem. at 14–16.)

In order to state a claim against the Commissioner in her individual capacity, Cox must allege facts showing that Commissioner Harpstead "was directly involved in making, implementing or enforcing a policy decision that 'create[d] unconstitutional conditions.'" *Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014) (quoting *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985)).  In a related context, the Eighth Circuit has stated, "Our case law is clear that the warden's general supervisory authority over prison operations does not

---

430.  Because the Court has found that Cox has failed to state a constitutional violation, his claim for the failure to policy fails for this reason as well.

[7] Cox also asserts his claims against the Jane/John Doe mailroom employees in their individual and personal capacities.  (Compl. at 1–2.)

[8] Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citations omitted)).  Because Cox does not seek civil damages, (Compl. at 1, 5), the Court does not address the doctrine of qualified immunity.

make him liable under § 1983." *Id.* (citing *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007); *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)).

Cox's claims against Commissioner Harpstead fail to meet this pleading standard. Cox alleges that the Commissioner "is responsible for all the operation of the facility including but not limited [to] all the actions of the employees within the Treatment Facility, including creating Policies and enforcing rights of all individuals residing within the program, also the actions and enforcement of . . . actions governed by all Treatment employees." (Compl. at 2.) But Cox has not alleged any facts specifically related to Commissioner Harpstead's personal involvement in the relevant MSOP conduct at issue here—the inspection of mail—or the creation and implementation of the Client Mail Policy. *Jackson*, 747 F.3d at 545 ("Jackson must plead facts that plausibly show direct involvement by the warden in the formation, implementation, or enforcement of [the] policy, which at this stage of the litigation he has failed to do.").

Accordingly, the Commissioner's motion is granted with respect to the claims brought against her in her individual capacity. Cox's individual-capacity claims against the Commissioner involving legal mail are dismissed without prejudice. However, because Cox's non-legal mail claims fail as a matter of law, such claims against Commissioner Harpstead in her individual capacity are dismissed with prejudice.

### D.   Claim Under Minn. Stat. § 144.651

For the remaining basis of his claims, Cox states, "Minn. Stat. § 144.651, address[es] the matter of • Handle your own money." (Compl. at 4.) The Commissioner

moves to dismiss this claim, arguing that as a private individual, Cox cannot bring a private cause of action under the statute.  (Def.'s Mem. at 17–18.)

Minnesota Statute § 144.651 is Minnesota's Patient Bill of Rights, which applies to patients and residents of health care facilities, and is found within the chapter concerning the Minnesota Department of Health.  Minn. Stat. § 144.651, subd. 1.  Among its provisions, it calls for patients to receive courteous treatment, appropriate medical care, and information about treatment.  *See, e.g.*, *id*., subds. 5, 6, 9.  In addition, it contains a provision on financial affairs, stating, "Competent residents may manage their personal financial affairs, or shall be given at least a quarterly accounting of financial transactions on their behalf if they delegate this responsibility in accordance with the laws of Minnesota to the facility for any period of time."  *Id*., subd. 25.  Also, it contains a provision on "communication privacy," in which it states, "Personal mail shall be sent without interference and received unopened unless medically or programmatically contraindicated and documented by the physician or advanced practice registered nurse in the medical record."  *Id*., subd. 21.  Importantly, what it does *not* contain is a mechanism for an individual private right of action for violations of the Patient Bill of Rights.

Although the Complaint does not indicate how the Patient Bill of Rights relates to Cox's allegations, in his opposition memorandum, Cox appears to link the statute to MSOP's Client Mail Policy.  (Pl.'s Opp'n at 2.)  A different statute, Minn. Stat. § 246B.04, subd. 1, expressly authorizes the DHS Commissioner to "adopt rules to govern the operation, maintenance, and licensure of secure treatment facilities operated by the Minnesota Sex Offender Program or at any other facility operated by the commissioner,

for a person committed as a sexual psychopathic personality or a sexually dangerous person." *See also* Minn. R. 9515.3080, subp. 1 (stating that MSOP "must develop and follow policies and procedures for maintaining a secure and orderly environment that is safe for persons in treatment and staff and supportive of the treatment program."). The DHS Commissioner has adopted such rules, including the MSOP Client Mail Policy, and is permitted to do so.

The Patient Bill of Rights does not create a private cause of action available to Cox for any violations, let alone a cause of action that supersedes the DHS Commissioner's authority to adopt rules to govern the operation of MSOP. Moreover, the Patient Bill of Rights is a state statute and "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1077 (D. Minn. 2014) (quoting *Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993)). Because Cox does not have a private right of action under the Patient Bill of Rights, nor has he alleged a viable constitutional violation, he cannot allege a violation of state law.

Accordingly, the Commissioner's motion is granted with respect to Cox's claims under Minn. Stat. § 144.651. Because this claim fails as a matter of law and repleading would be futile, it is dismissed with prejudice.

### E.    Jane/John Doe Defendants

In the Complaint, Cox asserts identical claims against the Jane/John Doe Defendants as he asserts against Commissioner Harpstead. He identifies the Jane/John Doe Defendants

as mailroom employees "[i]n charge of sorting and/or organizing the mail.  As well as issuing it to the patients that reside within the program at the MSOP."  (Compl. at 2.)

Because the same alleged facts and claims apply to all of the Defendants, all of whom are sued in their individual and professional capacities, the Court's rulings apply in equal measure to the Jane/John Doe Defendants.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant's Motion to Dismiss [Doc. No. 20] is **GRANTED**.

2.    Plaintiff's Complaint is **DISMISSED** [Doc. No. 1] as set forth below.

3.    Plaintiff's § 1983 claims regarding his non-legal mail, including his individual-capacity claims brought against all Defendants regarding non-legal mail, and claims for the failure to follow the Client Mail Policy with respect to non-legal mail, are **DISMISSED WITH PREJUDICE**.

4.    Plaintiff's claims brought pursuant to Minn. Stat. § 144.651, including individual-capacity claims brought against all Defendants under this statute, are **DISMISSED WITH PREJUDICE**.

5.    Plaintiff's § 1983 claims regarding his legal mail, including his individual capacity claims brought against all Defendants regarding legal mail, and his claims for the failure to follow the Client Mail Policy with respect to legal mail, are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 8, 2022          <u>s/Susan Richard Nelson</u>
                                                       SUSAN RICHARD NELSON
                                                       United States District Judge